IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER SEVEN |
| ANWAR ALI ABDALLAH, | : | BANKRUPTCY NO.: 5-10-bk-08411-JJT |
| DEBTOR | : | |
| ANWAR ALI ABDALLAH | : | {**Nature of Proceeding**: Objection to Claim No. 1 (Doc. #35} |
| OBJECTOR | : | |
| vs. | : | |
| MOHAMED AYOUB, | : | |
| CLAIMANT | : | |

# **OPINION**

On April 1, 2011, Mohamad Ayoub filed a Proof of Claim against the Debtor, Anwar Ali Abdallah, in the amount of $43,100. Attached to the Proof of Claim were three documents. First is what was termed a "survival agreement" outlining an agreement between Ayoub and Abdallah whereby Ayoub would sell to Abdallah the stock of a company known as the Barryville Coffee Shop, Inc. The Agreement is signed by the parties and appears to set out a consideration of $99,000. Abdallah is said to have legal counsel and Ayoub is referenced as being without counsel. The second document is a note signed by Abdallah in favor of Ayoub for $89,000. The third document is a note signed by Abdallah in favor of Gibson McKean (referred to in the agreement as the landlord) in the amount of $10,000.

Abdallah's Objection to the Proof of Claim asserts that no debt is owed since Ayoub assured Abdallah that "he did not have to pay him if the business did not succeed."

The Court looked forward to an interesting hearing on the dispute.

Despite that anticipation, counsel appeared and assured the Court that this matter could be "decided on briefs." While any case could be so disposed, I was rather surprised that the Debtor would be realistically capable of rebutting the enforceability of the loan documentation without offering some evidentiary testimony. Regardless, in his brief, the Debtor appears to have abandoned his argument that Ayoub was owed no money because the business failed. The Debtor did not even deny that money was owed to Ayoub. Rather, the Debtor argued that Ayoub was deceptive in Ayoub's own bankruptcy in 2009 and in Pike County, PA, litigation in 2010. The Debtor concludes that equity would therefore require that the claim be stricken.

While the Debtor meticulously outlines an array of so-called "misstatements" made by Ayoub, he simply fails to cite any example of prejudice that has befallen the Debtor, Abdallah, or, for that matter, any entity. Abdallah appears to bootstrap the holding of *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.1988), wherein it was held that "[i]n order to preserve the requisite reliability of disclosure statements [in bankruptcy proceedings] and to provide assurances to creditors regarding the finality of plans [of reorganization] which they have voted to approve, . . . under the facts . . . present[ed] Oneida's failure to announce [its] claim against a creditor [during its bankruptcy proceedings] preclude[d] it from litigating the cause of action . . . ." *Id*. at 418.

*Oneida* is inapposite to the facts in the case before me.

In *Oneida*, creditors were surely prejudiced by the debtor's failure to identify the cause of action. The plan in *Oneida* was confirmed without recourse to this information.

In this case, Ayoub's inability to nail down a specific and consistent amount for what was

owed him in Ayoub's bankruptcy and/or the Pike County pleadings may affect this specific claim litigation if it were at issue, which it is apparently not since Abdallah neither contests the obligation or its amount. He simply appeals to the inequity of rewarding Ayoub after what some may term a series of inconsistent pleadings. The fact is that if I were to disallow this claim, a likely windfall would benefit the Debtor, Abdallah. The Bankruptcy Code has a specific remedy for inequitable conduct and that remedy lies in 11 U.S.C. § 510(c), which states, "after notice and a hearing, the court may . . . under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." Equitable subordination is not now before me. What is at issue is the validity of Ayoub's Proof of Claim.

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is " prima facie " valid. *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed. 1991)). In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case. Id.; see *In re Windsor Communications Group, Inc.*, 45 B.R. 770, 773 (Bankr.E.D.Pa.1985). In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. See *In re WHET, Inc.*, 33 B.R. 424, 437 (Bankr.D.Mass.1983). The burden of persuasion is always on the claimant. *Holm,* 931 F.2d at 623 (quoting Collier § 502.02, at 502-22); *Windsor Communications*, 45 B.R. at 773.

*In re Allegheny Intern., Inc.,* 954 F.2d 167, 173 -174 (C.A.3 (Pa.),1992).

Abdallah appears to primarily rely on the failure of Ayoub to initially list the Abdallah obligation on Ayoub's bankruptcy schedules when Ayoub filed in August 2009 to Case no. 5:09-

06752. The law is fairly clear that an asset not scheduled on a bankruptcy is considered unadministered and remains part of the bankruptcy estate even after the case is closed. 11 U.S.C. § 554(c), (d). Had the facts been that simple, then Ayoub would not be possessed of the claim against Abdallah since it would be property of Ayoub's bankruptcy estate, and Ayoub would thus have no standing to file a claim in this case. However, the facts offer no such support for that argument for two main reasons. The claim was eventually scheduled, albeit inarticulately in amended schedules in Ayoub's bankruptcy. Doc. #30, Case No. 5:09-06752. Moreover, Ayoub's bankruptcy case was dismissed prior to the entry of any discharge. Dismissal revests property of the estate, i.e., the Abdallah claim, back into Ayoub. 11 U.S.C. § 349(b)(3).

The litany of misstatements attributed to Ayoub in statements and pleadings filed in this Court and in the Pike County Court can indeed impact on the credibility of Ayoub should there be a serious dispute regarding the indebtedness. There was no such dispute since Abdallah apparently abandoned his argument that there was no obligation by failing to offer testimony or argue that point in his supporting brief.

In summary, I am satisfied that the Debtor has failed to rebut the prima facie validity of Ayoub's claim.

My Order will follow.

By the Court,

John J. Thomas, Bankruptcy Judge
(CMS)

Date: August 17, 2011